UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
R. SUSAN WOODS,                      )
           Plaintiff                 )
                                     )
     v.                              ) C.A. No. 11-cv-30216-MAP
                                     )
WELLS FARGO BANK, N.A.,              )
AS TRUSTEE FOR FREMONT               )
INVESTMENT & LOAN SABR               )
2005-FR2 MORTGAGE PASS-              )
THROUGH CERTIFICATES,                )
SERIES 2005-FR2,                     )
           Defendant                 )
```

<u>MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS</u>
(Dkt. No. 9)

July 3, 2012

PONSOR, U.S.D.J.

<u>I. INTRODUCTION</u>

Defendant Wells Fargo Bank, National Association, as Trustee for Fremont Investment & Loan SABR 2005-FR2 Mortgage Pass-Through Certificates Series 2005-FR2 ("Defendant" or "Wells Fargo") holds a note secured by a mortgage on the home of Plaintiff R. Susan Woods at 43 West St. in Hadley, Massachusetts ("the Hadley property"). Woods has defaulted on the note, and Defendant is preparing to foreclose on the Hadley property.

Plaintiff's two-count complaint seeks, in Count I, a permanent injunction to stop the foreclosure and, in Count II, damages based on Defendant's alleged misrepresentations.

Defendant has moved to dismiss the complaint in its entirety. (Dkt. No. 9). For the reasons set forth below, Defendant's motion to dismiss will be allowed.

## II. FACTS

On January 26, 2005, Plaintiff executed a promissory note for $228,000 to Fremont Investment & Loan secured by a mortgage on the Hadley property. The mortgage identified Fremont as "lender" and the Mortgage Electronic Registration System ("MERS") both as "mortgagee" and as Fremont's nominee, giving MERS the right to foreclose and sell the property and to take any action that might be required of Fremont. See (Dkt. No. 10, Ex. 1(A) (Mortgage, at 3 of 13)). The mortgage document was recorded with the Hampshire County Registry of Deeds.

On October 29, 2007, MERS, as nominee for Fremont, executed an assignment, later recorded with the Hampshire County Registry of deeds, assigning the Hadley property's mortgage and note to "Wells Fargo Bank, National Association, as Trustee for Fremont Investment & Loan SABR 2005-FR2." (Id., Ex.1(B)).

This assignment was recorded in the Hampshire County Registry of Deeds on November 21, 2007. On January 22, 2009, MERS once again executed an assignment of the mortgage and the note to "Wells Fargo Bank, National Association, as

Trustee for Fremont Investment & Loan SABR 2005-FR2." MERS recorded the mortgage assignment with the Hampshire County Registry of Deeds on April 17, 2009. (Id., Ex. 1(C)).

Subsequently, Plaintiff defaulted on her loan obligations, and counsel for the assignee "Wells Fargo Bank, National Association, as Trustee for Fremont Investment & Loan SABR 2005-FR2" filed for authority to foreclose on Plaintiff's property in Massachusetts' Land Court.

On July 23, 2010, "Wells Fargo Bank, National Association, as Trustee for Fremont Investment & Loan SABR 2005-FR2" executed an assignment of all right, title, and interest it held in Plaintiff's mortgage to Defendant, "Wells Fargo Bank, National Association, as Trustee for Securitized Asset Backed Receivables LLC 2005-FR2 Mortgage Pass Through Certificates, Series 2005-FR2." The assignment of the mortgage was recorded with the Hampshire County Registry of Deeds on August 23, 2010. (Id., Ex. 1(E)).

Defendant's law firm wrote Plaintiff on July 5, 2011, notifying Plaintiff of its intention to foreclose. On July 29, 2011, Plaintiff brought this action pro se in Hampshire County Superior Court. On August 4, 2011, Plaintiff, now through counsel, filed an Amended Verified Complaint seeking preliminary and permanent injunctive relief (Count I) and asserting a claim for fraud and violation of Mass. Gen. Laws

ch. 93A (Count II).

In Count I "for Injunctive Relief," Plaintiff alleges that Defendant: (1) failed to comply with the requirements for foreclosing on a loan that originated with Fremont; (2) did not have legal authority or standing to provide the notice required to foreclose; and (3) did not have legal authority or standing to foreclose.

In Count II for "Fraud," Plaintiff alleges that Defendant misrepresented that "it was the 'holder' of her mortgage with entitlement to the rights to her monthly mortgage payments, and the related right to foreclose upon her mortgage, as security for an underlying debt that Defendant has no current rights to enforce . . . ." (Dkt. No. 1, Ex. A, at ¶ 79).

On September 2, 2011, Defendant removed the case to this court on diversity jurisdiction grounds. On October 7, 2011, it filed the motion to dismiss presently before the court.

### III. DISCUSSION

Although counsel's arguments are not always easy to trace, it appears that Plaintiff's case is anchored on three contentions.

First, Plaintiff contends that while Defendant may possess the mortgage document through assignment, it lacks

4

the physical note.  Possession of the mortgage without the note itself, Plaintiff contends, is insufficient to permit Defendant to proceed with foreclosure.

This argument suffers both a physical and a legal defect.  Physically, Defendant does possess the note.  Counsel for Defendant produced it at oral argument and has appended it to Defendant's reply brief.  <u>See</u>, (Dkt. No. 13, Ex. A (Part 2 of 2)).[1]  The note is endorsed in blank -- permitting its bearer to exercise any rights the note may provide.  <u>See</u> Mass. Gen. Laws ch. 106, §§ 3-301, 3-201.

Legally, even if Defendant lacked the note it would still be entitled to foreclose.  Very recently, in <u>Eaton v. Fed. Nat. Mortg. Ass'n</u>, No. SJC-11041, 2012 WL 2349008, at *1 (Mass. Jun. 22, 2012), the Massachusetts Supreme Judicial Court held that a rule requiring possession of both the mortgage and note as a precondition to foreclosure would apply only to actions for foreclosure where statutory notice

---

[1] Where a document is explicitly referenced in the complaint as it is here, (Dkt. No. 6), and the complaint's factual allegations are expressly linked to a document, the authenticity of which is not challenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).  <u>Beddall v. State St. Bank and Trust Co.</u>, 137 F.3d 12, 16-7 (1st Cir. 1998).

was provided after the Eaton decision.[2] The rule is not retroactive. Id. Plaintiff does not, and cannot, dispute the fact that Defendant holds the mortgage to the Hadley property. Therefore, as a pre-Eaton mortgagee, it would be entitled to foreclose even without proof that it was also the note holder or its agent.

Second, Plaintiff attempts to contest the assignments of the mortgage and note from MERS as mortgagee and nominee of the lender Fremont to the other entities described above, and ultimately to Defendant. Plaintiff, however, as Defendant points out, has no standing to challenge these assignments. Standing requires a case or controversy in which the litigant asserts her own rights and interests, not those of some third party. Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 104 (1st Cir. 1995). In a recent decision addressing a circumstance like this one, where a mortgage debtor was attempting to challenge the assignment of a note between noteholders, the First Circuit Bankruptcy Appellate Panel held that such debtors did not have standing to challenge the assignments. In re Correia, 452 B.R. 319, 324 (B.A.P. 1st Cir. 2011). The Bankruptcy Appeals panel

---

[2] The SJC also held that physical possession of the note was not required to foreclose. An agent of the noteholder must merely "stand in the shoes" of his or her principal. Id. at *8.

agreed with a bankruptcy judge's holding in an earlier case:

> [The Party] is not a third party beneficiary of the PSA [Pooling & Servicing Agreement], and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA. It would appear to this Court that the investors who bought securities based upon the pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA.

Id. (citing In re Almeida, 417 B.R. 140, 149 n.4 (Bankr. D. Mass. 2009)).

Here, as in Correia, it is undisputed that Plaintiff is not a party to the trust agreement, nor is she in privity with Fremont and its subsequent assignees. Therefore, as in Correia, she lacks standing to challenge the subsequent assignments of the promissory note she executed.

Plaintiff attempts to invoke U.S. Bank, N.A. v. Ibanez to support the proposition that a mortgagor does have standing to challenge the subsequent assignment of a mortgage he or she granted. 941 N.E.2d 40, 40 (Mass. 2011). However, in Ibanez, the plaintiffs were raising the mortgage trust's actual lack of ownership of the note, since the trust was not assigned the mortgage before it sought to foreclose. Id. at 45. The facts here are significantly different. As noted, Plaintiff cannot challenge the fact that Defendant was assigned the note before it sought to

foreclose.  Indeed, given the documents provided by Defendant, there can be no question that it possessed both the note and mortgage by assignment <u>prior</u> to initiating the foreclosure.  Plaintiff seeks to challenge the process by which the assignment was made, which for the reasons stated in <u>Correia</u> it has no standing to do.[3]

Plaintiff's third and only remaining argument is that Defendant was required to seek permission from the Attorney General of Massachusetts in order to foreclose, and was required to provide her with a copy of that request for permission under the terms of a consent decree between the Massachusetts Attorney General and Fremont[4].  The decree, which dates from February 2008, required Fremont to notify the Attorney General before initiating foreclosures on loans it originated in Massachusetts in order to allow the Attorney General to object in cases where the loans might violate state price controls on certain high cost mortgages

---

[3] Equally significantly, even assuming Plaintiff could as a legal matter challenge the prior assignments, counsel has offered no specifics as to how the assignments were allegedly defective, other than the demonstrably false suggestion that the current assignee does not possess the note.

[4] It is unclear which "Fremont" entity the Consent Decree applies to.  The record contains only excerpts of the Decree.

under Mass. Gen. Laws ch. 183C. (Dkt. No. 10, Ex.1 (Part 4 of 4, App'x A). The Decree was further modified in March 2008 to require that Fremont notify the Attorney General five days before assigning its Massachusetts mortgage loans and to require –- with written assent -- that its assignees complied with the Consent Decree. (Id. at App'x B)

As Defendant points out, there is no provision in the Consent Decree that would require Defendant to send Plaintiff a copy of notices it might have sent to the Attorney General before it initiates foreclosure. Equally significantly, there is no provision recognizing a private right of action by a borrower, or protection against foreclosure, in the event of any failure to comply with the Decree -- which Defendant, in any event, avers that it has fully complied with.

## IV. CONCLUSION

In the end, this is simply an unfortunate situation where a mortgagor has been unable to meet her obligations under the terms of a mortgage. While sympathetic, the court cannot find in the complaint any basis to justify intervention by the court in the foreclosure process. For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 9) is hereby ALLOWED. This case may now be closed.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge